## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

RORIE N. WILSON,

        Plaintiff,

v.                                                                ACTION NO. 4:14cv91

AC&S, INC. *et al.*,

        Defendants.

## OPINION AND ORDER

    This matter comes before the Court on defendant CBS Corporation's (formerly known as Viacom, Inc., and Westinghouse Electric Corporation) ("Westinghouse's") motion for summary judgment. Westinghouse filed its motion for summary judgment on September 8, 2015. ECF No. 47. Plaintiff filed his response in opposition on September 19, 2015. ECF Nos. 63, 64. On September 23, 2015, Westinghouse filed a rebuttal brief in support of the motion for summary judgment. ECF No. 71. On October 9, 2015, the Court held a motions hearing. For the reasons noted below, the Court ORDERS that Westinghouse's motion for summary judgment is GRANTED.

## I. PROCEDURAL HISTORY

    On July 3, 2002, plaintiff filed this action in the Circuit Court for the City of Newport News ("circuit court"). ECF No. 1 at 2. On July 18, 2014, Westinghouse filed a notice of removal to remove the case to this Court. ECF No. 1. On August 16, 2014, plaintiff filed a motion to remand (ECF No. 17) that was subsequently denied in an order by District Judge Arenda L. Wright Allen on March 17, 2015. ECF No. 27.

Plaintiff's original complaint[1] named Westinghouse and General Electric ("GE"), as well as 20 additional defendants[2] that have all since been dismissed from the case. After the cause of action was removed to this Court, GE filed a motion for summary judgment (ECF No. 51), a motion to dismiss (ECF No. 57), and a motion *in limine* to exclude the testimony of plaintiff's experts, R. Leonard Vance, Ph.D., J.D., PE, CIH ("Dr. Vance"), and John C. Maddox, M.D. (ECF No. 83). Plaintiff simply did not respond to GE's motions and informed the Court for the first time at the hearing on October 9, 2015 that he would no longer pursue claims against GE. On October 14, 2015, plaintiff filed a notice of voluntary dismissal of GE. ECF No. 91. Accordingly, Westinghouse remains the only defendant left in the case.

Additionally, plaintiff's original complaint identified three theories of liability: negligence, breach of implied warranty, and conspiracy. ECF No. 1-1. At the hearing, plaintiff confirmed that he was no longer pursuing a conspiracy charge against Westinghouse. Thus, negligence and breach of implied warranty remain plaintiff's only two theories of liability.

Plaintiff's claims against Westinghouse sparked discovery disputes, which led Westinghouse to file, on August 28, 2015, a motion to strike plaintiff's objections, compel full and complete discovery responses, and deem a request for admission admitted. ECF No. 35. On September 7, 2015, plaintiff responded in opposition to the motion (ECF No. 44) and, on September 10, 2015, Westinghouse filed a reply brief (ECF No. 55). On October 9, 2015, the

---

[1] Because plaintiff originally filed this action in the circuit court, his complaint for purposes of the present action before the Court reads "Motion for Judgment." ECF No. 1-1.
[2] Plaintiff's initial complaint named additional defendants: AC&S, Inc.; Amchem Products, Inc.; C.E. Thurston & Sons, Inc.; Combustion Engineering, Inc.; Dana Corporation; The Flintkote Co.; General Refractories Company; Georgia-Pacific Corporation; Halliburton Energy Services Corp.; Honeywell, Inc.; Hopeman Brothers, Inc.; International Minerals & Chemical Corp.; International Paper Corporation; Owens-Illinois, Inc.; Rapid American Corporation; Selby, Battersby & Co.; Uniroyal, Inc.; Waco Insulation, Inc.; Garlock, Inc.; and Metropolitan Life Insurance Co. ECF No. 1-1.

Court heard argument on Westinghouse's motion to compel. In an order issued on October 13, 2015, the Court granted Westinghouse's motion to compel full and complete discovery responses due to plaintiff's failure to timely respond to discovery or state his objections with specificity pursuant to Rule 26 of the Local Rules of the Eastern District of Virginia ("Local Rules"). ECF No. 89; E.D. VA. LOC. R. 26. Plaintiff was ordered to supplement his discovery responses by October 14, 2015. ECF No. 89.

During the pendency of the action, Westinghouse filed multiple motions to exclude. On September 8, 2015, Westinghouse filed a motion *in limine* to exclude the report, opinions, and testimony of Dr. Vance. ECF No. 45. On September 19, 2015, plaintiff filed his response in opposition. ECF No. 61. On September 23, 2015, Westinghouse filed a rebuttal brief in support of the motion *in limine* to exclude the report, opinions, and testimony of Dr. Vance. ECF No. 74. On October 9, 2015, the Court held a hearing on this motion and, in an opinion and order, granted Westinghouse's motion *in limine* to exclude the report, opinions, and testimony of Dr. Vance. Additionally, Westinghouse filed a motion to strike noncompliant expert reports and to exclude the testimony of Richard Alexander, Jr., M.D., Peter Frasca, Ph.D., and John Newton on September 10, 2015 (ECF No. 53), a motion *in limine* to exclude the testimony of John L. Hood on September 22, 2015 (ECF No. 67), and a motion to exclude or limit the testimony of Barry I. Castleman, Sc.D., on September 23, 2015 (ECF No. 75). Plaintiff did not respond to Westinghouse's motion to strike noncompliant expert reports and to exclude testimony of Richard Alexander, Jr., M.D., Peter Frasca, Ph.D., and John Newton or Westinghouse's motion *in limine* to exclude the testimony of John L. Hood. On October 2, 2015, Westinghouse withdrew both motions as moot after plaintiff did not include Richard Alexander, Peter Frasca, John Newton, or John L. Hood in his pretrial disclosures as witnesses he intended to call at trial.

3

ECF No. 79; FED. R. CIV. P. 26(a)(3). Plaintiff responded to Westinghouse's motion to exclude or limit the testimony of Barry I. Castleman, Sc.D., on October 5, 2015 (ECF No. 85), and Westinghouse filed a rebuttal brief on October 12, 2015 (ECF No. 88).

On September 23, 2015, Westinghouse filed a motion to strike plaintiff's claim for punitive damages. ECF No. 72. Once again, plaintiff did not respond to this motion and, instead, informed the Court for the first time at the hearing on October 9, 2015 that he would no longer pursue a claim for punitive damages against Westinghouse. Accordingly, the Court dismissed Westinghouse's motion to strike plaintiff's claim for punitive damages as moot, in an order dated October 13, 2015. ECF No. 89.

On September 8, 2015, Westinghouse filed a motion for summary judgment. ECF No. 47. Plaintiff responded in opposition on September 19, 2015 with a memorandum that did not comply with Local Rule 56, which requires a "specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." ECF No. 64; E.D. VA. LOC. R. 56(B). Plaintiff's response to Westinghouse's motion for summary judgment mirrors, almost identically, his response to Westinghouse's motion *in limine* to exclude Dr. Vance. ECF Nos. 63, 64. Both responses referenced and attached two 1960s era technical manuals on Westinghouse air circuit breakers and a 2010 naval advisory that notes the possible presence of asbestos in certain arc chutes contained within some circuit breakers, neither of which was referenced in Dr. Vance's written expert report. ECF Nos. 63-6, 63-7, 63-11. Westinghouse filed a rebuttal brief on September 23, 2015. ECF No. 71. Westinghouse's memorandum in support of the motion for summary judgment referenced plaintiff's claims related to Westinghouse micarta, transformers, commutated inverters, turbine generators,

4

overload relays, and arc chutes, which were all products plaintiff previously claimed had contributed to his disease. ECF No. 48 at 15-24; Pl. Ans. to Interrog., ECF No. 48-2 at 2-3; Compl. ¶ 4, ECF No. 1-1. Plaintiff's response to the summary judgment motion, however, only referenced Westinghouse circuit breakers containing arc chutes. ECF No. 64. At the hearing on October 9, 2015, the Court asked plaintiff to clarify which Westinghouse products remained in dispute. At that time, plaintiff first advised the Court that he was no longer pursuing claims against Westinghouse for asbestos exposure associated with Westinghouse micarta, transformers, commutated inverters, turbine generators, or overload relays. Westinghouse arc chutes remain the only product left in dispute. Accordingly, the Court will address the motion for summary judgment as it relates to Westinghouse arc chutes.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party "seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). Subsequently, the burden shifts to the

5

nonmoving party to present specific facts demonstrating that a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") When deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

### B. Asbestos-Related Products Liability

The parties have not agreed to whether federal maritime law or Virginia law applies to plaintiff's underlying products liability claim. Plaintiff's complaint asserts that the case arises "under the laws of Virginia as well as under the general admiralty and maritime laws of the United States." ECF No. 1-1 at 6. In turn, Westinghouse's memorandum filed in support of its motion for summary judgment analyzes plaintiff's claim under the standard for asbestos-related products liability claims brought under maritime law. ECF No. 48. At the hearing, Westinghouse confirmed its belief that maritime law applies. When asked at the hearing, however, plaintiff would not agree that maritime law definitively applies and suggested that Virginia law may apply instead.

The *Grubart* standard lays out a two-part test for the application of maritime law. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 538-40 (1997). First, the "location test" in a toxic tort case requires the Court to consider whether the alleged exposure to the toxic substance occurred onboard a naval vessel on the navigable waters. *Delatte v. A.W. Chesterton Co.*, 2011 U.S. Dist. LEXIS 121788, at *5-6 (E.D. Pa. Feb. 25, 2011). Secondly, the "connection test" requires that the incident have the "potential to disrupt maritime commerce"

and "the general character of the activity giving rise to the incident" must show a "substantial relationship to maritime activity." *Id.* at *6 (*citing Grubart*, 513 U.S. at 538-39). The filings pertaining to the motion for summary judgment do not contain sufficient information to enable the Court to apply the *Grubart* test to the facts of this case.

It is unnecessary to resolve this issue, however, because the standards are fundamentally similar under both maritime and Virginia law. In a products liability case under maritime law, the plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005).[3] If plaintiff can show "substantial exposure for a substantial period of time," this supports a finding that the product substantially caused plaintiff's injury. *Id.* However, a mere showing that defendant's product existed at plaintiff's workplace remains insufficient to prove that the product was a substantial factor in causing plaintiff's injury. *Id.* Plaintiff must show a "high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Harbour v. Armstrong World Indus., Inc.*, 932 F.2d 968 (6th Cir. 1991). Under Virginia law, plaintiff must show "it is more likely than not" that plaintiff's alleged exposure to asbestos from defendant's product "occurred prior to the development" of his illness and "was sufficient to cause" his illness. *Ford Motor Co. v. Boomer*, 285 Va. 141, 159, 736 S.E.2d 724, 733 (Va. 2013). Under either standard, plaintiff faces the same set of hurdles and, accordingly, the outcome of his case depends on whether he can establish causation by showing that Westinghouse breached a duty that caused his injuries.

---

[3] *See also Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986) (noting that, under Maryland state law, a plaintiff in a products liability asbestos case must show "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked").

### III. UNDISPUTED FACTS

In 2002, plaintiff filed the present case in circuit court. ECF No. 1-1. From 1963-2001, plaintiff was employed by the United States Navy at Norfolk Naval Shipyard as a shipfitter, electrician, draftsman, and engineer. ECF No. 1-1. Plaintiff's complaint stated that he had been diagnosed with asbestosis on March 15, 2001, a disease caused by asbestos-containing insulation products he encountered at Norfolk Naval Shipyard. ECF No. 1-1. When the case was removed to this Court, plaintiff produced medical records indicating that he had since been diagnosed with mesothelioma, a form of cancer. ECF No. 62-13.

Plaintiff's remaining claims stem from his work as a nuclear engineer and electrical engineer from approximately 1971 through 1979, during which he encountered Westinghouse circuit breakers containing arc chutes. Pl. Dep. vol. 2, 470:23-471:5, Sept. 17, 2014. Each circuit breaker, designed to protect the circuit that supplied electricity to other pieces of equipment on the ship, contained three arc chutes. Pl. Dep. vol. 1, 121:15, Nov. 14, 2014; Pl. Dep. vol. 2, 271:21-272:4, Sept. 17, 2014. The arc chutes associated with the circuit breaker were designed to catch an electric arc or "fireball" generated by the opening and closing of a circuit. Pl. Dep. vol. 1, 128:14-19, Nov. 14, 2014. The arc chutes dissipated the heat and energy accompanying the fireball moving up the chute so that it did not damage the breaker assembly. Pl. Dep. vol. 1, 128:21-25, Nov. 14, 2014. Each arc chute was encapsulated in a hard, molded resin matrix. Vance Dep. 214:17-22.

Plaintiff wrote operating procedures and searched for hairline cracks to assist shopworkers tasked with inspecting, testing, and replacing circuit breakers. Pl. Dep. vol. 1, 161:15-162:13, Aug. 21, 2014. Sometimes, plaintiff would hold the arc chutes to look for cracks, blowing and brushing off dust in the process. Pl. Dep. vol. 1, 162:19-22, Aug. 21, 2014.

8

While working as a nuclear engineer, plaintiff checked circuit breakers to ensure proper functioning. Pl. Dep. vol. 1, 130:13-15, Nov. 14, 2014. If the arc chute component of a circuit breaker needed replacement, plaintiff would typically order one. Pl. Dep. vol. 1, 133:2-7, Nov. 14, 2014. In an emergency situation (that is, if the ship needed to sail immediately), the arc chute would be repaired, but plaintiff did not recall ever personally repairing an arc chute in an emergency situation. Pl. Dep. vol. 2, 346:23-347:4, Dec. 22, 2014. Approximately, one week a month, plaintiff worked on circuit breakers. Pl. Dep. vol. 2, 474:23-475:3, Sept. 17, 2014. During this time, shop workers blew the arc chutes with compressed air and dust blew "all over," including on the arc chutes and frame. Pl. Dep. vol. 2, 475:21, Sept. 17, 2014. Plaintiff also described taking arc chutes back to the shop to work on them at "every availability" between 1971 and 1978. Pl. Dep. vol. 2, 477:22-25, Sept. 17, 2014.

## IV. ANALYSIS

After Westinghouse filed a motion for summary judgment, plaintiff did not follow the requirements of Local Rule 56, which requires that a brief in response to a motion for summary judgment include "a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. VA. LOC. R. 56(B). Not only did plaintiff not include a specifically captioned section listing all material facts in dispute, but, as noted by Westinghouse in its rebuttal brief, plaintiff does not even use the words "genuine issue" or "material fact" in his response. ECF Nos. 63, 71 at 4. Notwithstanding the shortcomings associated with plaintiff's response, at the October 9, 2015 hearing, the Court specifically gave plaintiff the opportunity to make an additional filing to bring any additional facts to the court's attention. *See* FED. R. CIV. P. 56(e)(1). On October 13, 2015, plaintiff filed

9

"supplemental submissions" for the Court's consideration, which included excerpts from plaintiff's deposition, a Westinghouse technical manual, and a military specification describing circuit breakers, yet still did not include a statement of disputed facts. ECF No. 90. Nonetheless, the Court considered these supplemental materials.

Local Rule 56 specifies that, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. VA. LOC. R. 56(C); *see also Deavers v. Vasquez*, 57 F. Supp. 3d 599, 601 (E.D. Va. 2014) ("Under the Local Rules, the Court may accept those facts not disputed to be admitted."). Because the Court must view the facts in the light most favorable to plaintiff, the Court has examined plaintiff's brief and exhibits to identity any evidence that creates a genuine issue of material fact. For the reasons discussed below, the Court FINDS that, while a genuine issue of material fact exists regarding whether the Westinghouse arc chutes to which plaintiff was exposed contained asbestos, no genuine issue of material fact exists regarding whether Westinghouse arc chutes released asbestos fibers that were a substantial factor in causing plaintiff's injury under maritime law or were more likely than not sufficient to cause his injury under Virginia law.

### A. A genuine issue of material facts exists regarding whether the Westinghouse arc chutes to which plaintiff was exposed contained asbestos.

At times, plaintiff has expressed less than complete confidence that the Westinghouse arc chutes he encountered contained asbestos. At the motions hearing, plaintiff's counsel stated that all the evidence combined "suggests that it is very likely that [Westinghouse arc chutes] contained asbestos." Nonetheless, by viewing, in a light most favorable to the plaintiff, evidence of plaintiff's own knowledge and testimony, two 1960s era technical manuals on Westinghouse

air circuit breakers, and a 2010 naval advisory that notes the possible presence of asbestos in some kinds of arc chutes, the Court FINDS that a genuine issue of material fact exists regarding whether plaintiff encountered asbestos-containing Westinghouse arc chutes.

Plaintiff testified that the Westinghouse arc chutes he encountered appeared to contain asbestos. When questioned about the arc chutes, plaintiff testified that, "[t]hey were made out of – it looked like to me asbestos." Pl. Dep. vol. 1, 132:7-8, Nov. 14, 2014. When asked what parts of the arc chute contained asbestos, plaintiff replied that he thought "the chute itself contained asbestos." Pl. Dep. vol. 2, 476:14-18, Sept. 17, 2014. Plaintiff confirmed that he "didn't go to the chemistry lab and check [the arc chute] out at the time, but it did look like [asbestos] to me" because the arc chute was gray, fibrous, and used in a high-temperature application. Pl. Dep. vol. 2, 274:17-275:11, Sept. 17, 2014. Although he received no training on how to identify asbestos-containing materials, plaintiff's degree in electrical engineering, as well as his work history as a nuclear engineer and electrical engineer, support his testimony and help create a genuine issue of material fact about whether the Westinghouse arc chutes he encountered contained asbestos. Pl. Dep. vol. 2, 221:17-222:3, Dec. 22, 2014; ECF No. 46-3 at 2.

This conclusion is also supported by the Westinghouse technical manuals and the naval advisory provided to the Court in plaintiff's opposition to the summary judgment motion. Although a significant and singular problem with plaintiff's case is his failure to identify the actual product he encountered in the 1970s (that is, the specific kind of Westinghouse circuit breakers containing the arc chutes in question), the two, 1960s era Westinghouse technical manuals and the 2010 naval advisory suggest generally that the Westinghouse circuit breakers discussed in those documents actually do or may, respectively, contain arc chutes containing asbestos. ECF Nos. 62-6 at 9, 62-7 at 14 (describing arc chutes containing "metal and asbestos

11

plates"); ECF No. 62-11 at 3-4 (noting "[t]he following ACB circuit breakers listed by manufacturer may contain asbestos arc chutes . . . Westinghouse: All DBN types"). Such evidence, when coupled with plaintiff's deposition testimony, is sufficient to create a genuine dispute of material fact concerning whether plaintiff encountered asbestos-containing arc chutes.

### B. No genuine issue of material fact exists regarding whether plaintiff's exposure to Westinghouse arc chutes was a substantial factor in causing plaintiff's injury under maritime law or more likely than not was sufficient to cause plaintiff's injury under Virginia law.

This leaves for consideration whether a dispute of material fact exists about whether Westinghouse arc chutes released asbestos fibers that were a substantial factor in causing plaintiff's injury under maritime law or whether such exposure was more likely than not sufficient to cause such injury under Virginia law. To establish that such a dispute exists here, plaintiff primarily relies on plaintiff's deposition testimony and the expert report and proposed testimony of his causation expert, Dr. Vance.

Plaintiff's knowledge and testimony do not create a genuine issue of material fact about whether Westinghouse arc chutes released asbestos fibers that caused plaintiff's injury. Because plaintiff never tested the alleged asbestos composition of the arc chute, his testimony primarily recounts his visual observations. Pl. Dep. vol. 2, 274:17-275:11, Sept. 17, 2014. Plaintiff testified that the arc chutes he encountered contained what "looked like" asbestos. Pl. Dep. vol. 1, 132:7-8, Nov. 14, 2014. However, Dr. Vance testified that there is no way to quantify asbestos in dust solely by visible inspection. Vance Dep. 24:7-20, 233:3-6. Plaintiff also testified that he saw visible dust "on the arc chute and on the frame and everywhere." Pl. Dep. vol. 2, 475:22-23, Sept. 17, 2014. According to plaintiff, this dust became airborne when the arc chutes were blown with compressed air. Pl. Dep. vol. 2, 475:5-23, Sept. 17, 2014. Plaintiff, however, has not advanced any particular knowledge or facts about how much of the dust he

12

encountered allegedly contained asbestos.  On the other hand, Westinghouse submitted an

affidavit by retired Westinghouse engineer, Raymond McMullen, which notes that the air circuit

breakers plaintiff described were contained in metal cabinets "through which ambient air and

dust from the surrounding environment can pass freely from the outside to the inside of the

cabinet." ECF 46-10 at 2.  Thus, the composition of the dust plaintiff observed is uncertain.

Moreover, plaintiff's own knowledge and testimony fail to create genuine issues of material fact

concerning the extent of asbestos content in Westinghouse arc chutes, whether the arc chutes he

encountered released asbestos fibers, or what concentration of asbestos fibers were released, if

any.  Accordingly, plaintiff's testimony creates no genuine dispute of material fact about whether

the Westinghouse arc chutes released airborne asbestos fibers at levels significant enough to

constitute a substantial factor in causing plaintiff's injury or at levels which were more likely

than not sufficient to cause plaintiff's injury.

        To attempt to address this gap in proof, plaintiff intended to call Dr. Vance to establish

the threshold limit value that signifies an unacceptable level of airborne asbestos and show that

plaintiff encountered an unacceptable level of airborne asbestos through exposure to

Westinghouse arc chutes.  In his report, Dr. Vance identifies the accepted threshold limit value

during the time plaintiff was working as "5 million particles per cubic foot or 12 [fibers per cubic

centimeter]." ECF No. 62-1 at 8.  He then concludes that the presence of visible dust indicates

that plaintiff was exposed to asbestos fibers from Westinghouse arc chutes at levels greater than

this accepted threshold limit value. ECF No. 62-1 at 8.  In two identified opinions at the end of

his report, Dr. Vance states that "defendants failed to provide appropriate warnings about the

hazards of asbestos to [plaintiff]" and "the defendants' actions in these respects fell beneath a

reasonable standard of care."   In a 21 page opinion and order, the Court discussed why Dr.

Vance's report, opinions, and proposed testimony fail to satisfy the standards identified by *Daubert* and Federal Rule of Evidence 702. *Daubert*, 509 U.S. 579 (1993); FED. R. EVID. 702. In sum, the Court found the reasoning and methodology Dr. Vance used to conclude that plaintiff encountered an unacceptable level of airborne asbestos was unreliable. The Court also found Dr. Vance's report, opinions, and proposed expert testimony were not relevant because they were not "sufficiently tied to the facts of the case" and incapable of aiding "the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.

Plaintiff acknowledged Dr. Vance's essential role in his case when he submitted virtually identical responses to Westinghouse's motion to exclude Dr. Vance and Westinghouse's motion for summary judgment. He also acknowledged Dr. Vance's role in his case at the motions hearing. The Court asked plaintiff about other evidence, documents, facts or testimony that he would rely on to prove that Westinghouse arc chutes caused his injury in the event that the Court granted Westinghouse's motion to exclude Dr. Vance. Plaintiff's counsel responded that "Dr. Vance's testimony would be critical to the case" and answered affirmatively when the Court clarified whether his answer signified an inability to provide other sources proving causation. Notwithstanding the concessions by plaintiff's counsel, the Court gave plaintiff the opportunity to supplement its opposition to the summary judgment motion to attempt to remedy plaintiff's failure to comply with the Local Rules and bring any such facts to the Court's attention. After plaintiff filed "supplemental submissions" for the Court's consideration, ECF No. 90, the Court conducted a searching inquiry through all evidence submitted for any facts supporting plaintiff's theory of causation. However, the Court has found no facts that give rise to a genuine dispute of material fact regarding whether Westinghouse arc chutes caused plaintiff's injury.

## V. CONCLUSION

Accordingly, the Court FINDS the evidence is not "such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.  Although a genuine issue of material fact exists regarding whether the Westinghouse arc chutes plaintiff worked around contained asbestos, no genuine issue of material fact exists regarding whether such arc chutes emitted airborne asbestos fibers to which plaintiff was exposed and which were a substantial factor in causing plaintiff's injury or more likely than not were sufficient to cause plaintiff's injury.  Accordingly, the Court FINDS that summary judgment is proper.

## VI. ORDER

For the reasons discussed above, the Court hereby ORDERS that Westinghouse's motion for summary judgment, ECF No. 47, is GRANTED.  Moreover, the Court ORDERS that Westinghouse's motion to exclude or limit the testimony of Dr. Castleman, ECF No. 75, is DENIED as MOOT.

The Clerk of Court shall mail a copy of this Opinion and Order to all counsel of record.

RJK /s/

**Robert J. Krask**
**United States Magistrate Judge**

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
November 19, 2015

15